## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RANDY R. LIEBICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-242 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | Hon. Judge Thomas M. Durkin |
| CORRECTIONS, *et al.*, | ) | Hon. Magistrate Judge Sunil R. Harjani |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS CLEMENTS, MITCHELL, PEREZ, AND STARKEY'S
## ANSWER AND AFFIRMATIVE DEFENSES

Defendants Joshua Clements, Byron Mitchell, Victor Perez, and Joel Starkey, by and through their attorney, Kwame Raoul, Attorney General for the State of Illinois, and for their Answer and Affirmative Defenses to Plaintiff's Complaint [ECF # 1], state as follows:

### Introduction

1.     Mr. Liebich was released from the custody of the Illinois Department of Corrections ("IDOC") in September 2017 after serving nearly eighteen years for a crime he did not commit. Since 2009, Mr. Liebich has suffered from chronic kidney stones that have led to multiple hospitalizations, and an enlarged prostate that prevents him from urinating normally. In 2011, Mr. Liebich brought a civil rights suit arising from prison personnel's failure to provide him with appropriate medical care and accommodations for his kidney condition. Among other things, the 2011 lawsuit alleged that, although the defendants knew Mr. Liebich's medical condition prevented him from providing a urine sample in a short timeframe, they repeatedly subjected him to a drug testing protocol that required him to do so. Defendants then punished Mr. Liebich severely when he was unable to comply. In January 2017, Mr. Liebich entered into a settlement agreement with the defendants in that lawsuit.

**ANSWER: Defendants admit Plaintiff is a former IDOC inmate who was housed at the Stateville Correctional Center ("Stateville"). Defendants admit Plaintiff filed *Liebich v. Hardy, et al.*, No. 11-cv-5624 (N.D. Ill.), in August, 2011, alleging deliberate indifference and other claims against IDOC, IDOC employees, Wexford Health Sources, Inc. ("Wexford"),**

**and Wexford employees. Defendants admit Plaintiff filed a stipulation to dismiss** *Liebich v.*

*Hardy* **as to IDOC and the IDOC employees in July, 2015. Defendants lack knowledge or**

**information sufficient to form a belief as to the truth of the remaining allegations contained**

**in this paragraph.**

2.      Immediately following the settlement, however, IDOC employees resumed subjecting Mr. Liebich to arbitrary drug testing that required him to provide urine samples in a two-hour timeframe, and again responded with draconian punishment when his medical condition prevented him from complying. Mr. Liebich brings this federal civil rights and Illinois tort action to redress the physical and emotional harm Defendants inflicted on him with their unconstitutional and unlawful acts.

**ANSWER: Defendants admit Plaintiff filed a stipulation to dismiss** *Liebich v. Hardy* **as to**

**IDOC and the IDOC employees in July, 2015. Defendants admit Plaintiff filed the instant**

**suit in January, 2019. Defendants lack knowledge or information sufficient to form a belief**

**as to the truth of the remaining allegations contained in this paragraph. Defendants deny**

**any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any**

**relief whatsoever.**

## Jurisdiction and Venue

3.      This court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a) because Mr. Liebich brings this action under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"), and the Rehabilitation Act, 29 U.S.C. § 974, to remedy violations of his civil rights.

**ANSWER: Defendants deny that, under the Eleventh Amendment, the Illinois Public**

**Labor Relations Act, and the Illinois Court of Claims Act, jurisdiction is proper as to all of**

**Plaintiff's claims.**

4.      This court has supplemental jurisdiction over Mr. Liebich's Illinois tort claims pursuant to 28 U.S.C. § 1367(a).

**ANSWER: Defendants deny that, under the Eleventh Amendment, the Illinois Public Labor Relations Act, and the Illinois Court of Claims Act, jurisdiction is proper as to all of Plaintiff's claims.**

5.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

**ANSWER: Defendants admit venue is proper.**

<u>Parties</u>

6.      Mr. Liebich was, at all relevant times, a prisoner of the IDOC incarcerated at Stateville Correctional Center located at 16830 South Broadway Street in Joliet, Illinois ("Stateville"). In September 2018, Mr. Liebich's conviction was vacated and he was released from prison. He now resides in Chicago, Illinois.

**ANSWER: Defendants admit Plaintiff was an inmate in IDOC custody, and housed at Stateville, at all times relevant to the instant suit. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

7.      Defendant IDOC is a government agency responsible for all Illinois state prisons, including Stateville.

**ANSWER: Defendants admit the allegations contained in this paragraph.**

8.      Defendant John Baldwin is the Acting Director of the IDOC, responsible for the overall operation of the IDOC. Defendant Baldwin is being sued in his official capacity only.

**ANSWER: Defendants admit Defendant Baldwin is the Acting Director of the IDOC Defendants admit Plaintiff purports to sue Defendant Baldwin in his official capacity. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

9.      Defendant Randy Pfister is an IDOC employee and the former warden of Stateville. At all relevant times, Warden Pfister was acting under color of law. Warden Pfister is being sued in his individual capacity.

**ANSWER: Defendants admit Defendant Pfister was an IDOC employee at all times relevant to the instant suit, and is the former Warden of Stateville. Defendants admit Plaintiff purports to sue Defendant Pfister in his individual capacity. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

10.     Defendant Walter Nicholson is an IDOC employee and the current warden of Stateville. At all relevant times, Warden Nicholson was acting under color of law. Warden Nicholson is being sued in his individual capacity.

**ANSWER: Defendants admit Defendant Nicholson was an IDOC employee at all times relevant to the instant suit, and is the former Warden of Stateville. Defendants admit Plaintiff purports to sue Defendant Nicholson in his individual capacity. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph. Defendants deny that Defendant Nicholson is the current Warden of Stateville.**

11.     Defendant Charles Best is an IDOC employee who, at all relevant times was a lieutenant commander at Stateville and chair of the Adjustment Committee acting under color of law. Best is being sued in his individual capacity.

**ANSWER: Defendants admit Defendant Best was an IDOC employee at all times relevant to the instant suit, and is a Correctional Lieutenant at Stateville. Defendants admit Defendant Best was the Chairperson of the Adjustment Committee for the hearings that took place on January 23 and March 27, 2018. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph. Defendants deny that Defendant Best is a Lieutenant Commander at Stateville.**

12.     Defendant Tyneer Butler-Winters is an IDOC employee who, at all relevant times, was a correctional counselor at Stateville and member of the Adjustment Committee acting under color of law.

**ANSWER: Defendants admit Defendant Butler-Winters was an IDOC employee at all times relevant to the instant suit, and is Correctional Counselor at Stateville. Defendants admit Defendant Butler-Winters sat on the Adjustment Committee for the hearing that took place on January 23, 2018. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph. Defendants deny that Defendant Best is a Lieutenant Commander at Stateville.**

13.     Defendants Starkey, Victor M. Perez, Byron Mitchell, Joshua Clements, Cayman Wilcox, Johnson, Rivera, Davenport, Shevlin, and Ethan A. Olson are IDOC employees who, at all relevant times, were working as correctional officers in the Internal Affairs unit at Stateville acting under color of law. These defendants are being sued in their individual capacities.

**ANSWER: Defendants admit Defendant Clements was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Parole Agent with IDOC. Defendants admit Defendant Davenport was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Correctional Officer at Stateville. Defendants admit Defendant Johnson was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Correctional Officer at Stateville. Defendants admit Defendant Mitchell was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Correctional Officer at Stateville. Defendants admit Defendant Olson was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Correctional Officer at Stateville. Defendants admit Defendant Perez was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Correctional Officer at Stateville. Defendants admit Defendant Rivera was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Correctional Officer at Pontiac Correctional Center. Defendants admit Defendant Shevlin was an IDOC employee working**

**at Stateville at all times relevant to the instant suit, and is a current Correctional Officer at Stateville. Defendants admit Defendant Starkey was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Internal Security Investigator with IDOC. Defendants admit Defendant Wilcox was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Correctional Officer at Stateville. Defendants admit Plaintiff purports to sue Defendants Clements, Davenport, Johnson, Mitchell, Olson, Perez, Rivera, Shevlin, Starkey, and Wilcox in their individual capacities. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

<u>Facts</u>

A.    Mr. Liebich's History of Kidney Distress at Stateville

14.    In September 2009, while Mr. Liebich was incarcerated at Stateville, he began to experience constant and severe pain in his abdomen and kidneys. In October 2009, Mr. Liebich sought medical attention.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

15.    Wexford Health Sources, Inc. ("Wexford") is a private company that contracts with the State of Illinois to provide medical care to prisoners in IDOC custody, including men housed at Stateville.

**ANSWER: Defendants admit the allegations contained in this paragraph.**

16.    In November and December 2009, medical professionals employed by Wexford saw Mr. Liebich in the Health Care Unit at Stateville.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

17.    Though they refused to refer Mr. Liebich to an outside hospital for treatment, the doctors ordered lab work on two occasions. The results from both labs revealed signs of kidney distress, including elevated blood urea nitrogen and creatinine levels

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

18.     Through the end of 2009 and into the spring of 2010, Mr. Liebich continued to experience kidney pain. He also began to pass kidney stones while urinating. During this time, Mr. Liebich sought medical care by submitting written requests to the prison's health care providers and by sending written grievance forms to non-medical staff—including Stateville's warden—describing his condition and pleading for medical attention.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

19.     On June 25, 2010, Mr. Liebich found himself completely unable to urinate. More than twenty-four hours later, Mr. Liebich was sent to the prison's Health Care Unit where a doctor diagnosed him with an impacted urinary calculus, meaning a large kidney stone was lodged in his urethra preventing urine from passing through.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

20.     Rather than refer Mr. Liebich to an outside hospital for emergency treatment, Dr. Saleh Obaisi—a Wexford employee—attempted to remove the stone by inserting tweezers into Mr. Liebich's urethra. The procedure was unsuccessful and stretched open Mr. Liebich's urethra, causing it to tear and bleed.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

21.     Hours passed while Mr. Liebich languished bleeding and in pain. In the late afternoon, Mr. Liebich was finally transported to Provena Saint Joseph Medical Center. There, a urologist surgically removed the stone while Mr. Liebich was under general anesthesia.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

22.     Following his surgery, Mr. Liebich submitted at least three grievances complaining that he was not receiving medical care for his kidney condition. In addition, Mr. Liebich described his symptoms and need for care during multiple visits to the Health Care Unit. Lab work ordered by prison medical staff in the summer and fall of 2010 again came back abnormal, indicating kidney distress.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

23.     On September 25, 2010, Mr. Liebich again found himself unable to urinate. Defendant Clements, who was working as a correctional officer in the cell house where Mr. Liebich resided, escorted Mr. Liebich to the Health Care Unit. Mr. Liebich was admitted to the infirmary for three days. During his hospitalization, medical professionals inserted a catheter into Mr. Liebich's bladder to drain the urine because Mr. Liebich could not urinate naturally.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

B.     Mr. Liebich's History of Drug Testing at Stateville

24.     Over the years Mr. Liebich was incarcerated at Stateville, he was subjected to sporadic drug tests by officers from the Internal Affairs unit ("IA"). On information and belief, IA is responsible for investigating administrative and criminal matters regarding staff and inmates at IDOC prisons. When administering a drug test, an IA officer or officers typically escort a prisoner to a holding cell in the Investigations Unit at the prison. There, the IA officer provides the prisoner a plastic specimen cup, and permits the prisoner two hours to urinate into the cup. Once the prisoner has done so, the IA officer closes the cup using a lid with an attached dipstick. The dipstick indicates the presence of drugs in the sample. On occasion, an IA officer will provide a specimen cup to a prisoner in his cell, rather than escorting the prisoner to the Investigations Unit.

**ANSWER: Defendants admit that Internal Affairs unit ("IA") is responsible for investigating administrative and criminal matters regarding staff and inmates at IDOC prisons. Defendants admit that, when administering a drug test, an IA officer or officers typically escort a prisoner to a holding cell in the Investigations Unit at the prison. There, the IA officer typically provides the prisoner a plastic specimen cup, and typically permits the prisoner two hours to urinate into the cup. Once the prisoner has done so, the IA officer typically closes the cup using a lid with an attached dipstick. The dipstick typically indicates the presence of drugs in the sample. On occasion, an IA officer will provide a specimen cup to a prisoner in his cell, rather than escorting the prisoner to the**

**Investigations Unit. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

25.     In the seventeen years Mr. Liebich was incarcerated, he submitted to dozens of drug tests. He never failed a drug test and was never found in possession of any illegal substances.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

26.     On January 5, 2011, an IA officer escorted Mr. Liebich from his cell to the Investigations Unit, and informed Mr. Liebich he would have two hours to provide a urine sample for drug testing. Mr. Liebich explained that he suffered from a kidney condition that affected his ability to urinate, and he may need additional time to produce a urine sample.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

27.     Mr. Liebich was unable to produce the urine sample within two hours.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

28.     On January 6, 2011, Mr. Liebich received a disciplinary report for his failure to provide the sample.

**ANSWER: Defendants admit that, on January 5, 2011, Plaintiff received a disciplinary ticket for "Drugs and Drug Paraphernalia." Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

29.     Mr. Liebich was entitled to a hearing on the disciplinary report before an administrative body at the prison known as the Adjustment Committee.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

30.     On information and belief, pursuant to IDOC policy, when a disciplinary report is referred to the Adjustment Committee, the prisoner named in the report is entitled to a hearing before two committee members, during which he is given the opportunity to address the

Committee and present documentary evidence and witnesses in his defense. After reviewing the evidence, the Committee will determine the prisoner's guilt and, if it finds him guilty, impose a punishment.

**ANSWER: Defendants admit that, generally speaking, when a disciplinary report is referred to the Adjustment Committee, said committee consist of two committee members, during which time the inmate is given the opportunity to address the Committee and present certain documentary evidence and witnesses in his defense. After reviewing the evidence, the Committee will determine the inmate's guilt, recommend a disposition to the Chief Administrative Officer, and, if appropriate, recommend a punishment to the Chief Administrative Officer of the correctional institution in question. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

31.     Mr. Liebich's hearing took place on January 13, 2011. Mr. Liebich was not permitted to present any documentary evidence or witnesses. He nevertheless explained his medical condition and referred the Committee members to medical staff, correctional staff, and medical records that could corroborate his account.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

32.     On January 19, 2011, Mr. Liebich received the Adjustment Committee's final report, which found him guilty of violating the drug testing policy. The report reasoned that Mr. Liebich "could not produce proof of the medical condition he claimed he had" as his "medical record has nothing about Liebich having a urinating problem."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

33.     The Adjustment Committee sentenced Mr. Liebich to six months of segregation and other restrictions, and revoked six months of his good time credit.

**ANSWER: Defendants admit that, following the January 5, 2011, disciplinary ticket Plaintiff received for "Drugs and Drug Paraphernalia," he received six (6) months C**

**Grade, six (6) months segregation, six (6) months commissary restriction, six (6) months contact visits restriction, loss of six (6) months of good conduct credits, and had to make $7.00 in restitution payments. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

34.     On January 26, 2011, Mr. Liebich filed a grievance challenging the Adjustment Committee's finding and attaching medical records that documented his difficulty and, on occasion, inability to urinate.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

35.     The grievance officer who reviewed Mr. Liebich's submission recommended that the disciplinary report be expunged. The warden, however, rejected that recommendation and permitted Mr. Liebich to remain in segregation for the entire six-month sentence.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

36.     During Mr. Liebich's time in segregation, he continued to seek treatment for his kidney stones. In March 2011, for example, a CAT scan showed that Mr. Liebich had developed another stone in one of his kidneys.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

37.     On May 9, 2011, Mr. Liebich underwent surgery at an outside hospital to permit a urologist to examine his urethra and bladder. The urologist diagnosed Mr. Liebich with a swollen prostate and prescribed Flomax to treat the condition and help him urinate.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

38.     Until October 2014, Mr. Liebich received Flomax, and his kidney symptoms remained controlled.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

39.     In the fall of 2014, a new doctor arrived at the prison. On October 16, 2014, she discontinued Mr. Liebich's Flomax prescription. Mr. Liebich submitted a grievance alerting the prison to his need for the medication, but his prescription was not reinstated.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

40.     Thereafter, Mr. Liebich again began developing kidney stones and experiencing difficulty urinating.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

41.     Between 2011 and 2015, Mr. Liebich was sent to the urology department at UIC on at least four occasions for treatment of his kidney condition.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

C.     Mr. Liebich's 2011 Lawsuit and 2017 Settlement

42.     On August 17, 2011, Mr. Liebich sued Stateville's warden, a correctional officer, Wexford, and several Wexford employees for violating his rights under federal and Illinois law by failing to provide appropriate medical care, and for failing to accommodate his disability in administering drug tests. Mr. Liebich's Third Amended Complaint named additional IDOC employees as defendants. See Liebich v. Hardy, No. 11-cv-05624 (N.D. Ill.), ECF No. 123.

**ANSWER: Defendants admit Plaintiff filed *Liebich v. Hardy* in August, 2011. Defendants admit Plaintiff's Third Amended Complaint in *Liebich v. Hardy* alleged deliberate indifference and other claims against IDOC, IDOC employees, Wexford, and Wexford employees. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

43.     After almost six years of litigation, the parties settled Mr. Liebich's claims. He filed a stipulation to dismiss the lawsuit on January 3, 2017.

**ANSWER: Defendants admit Plaintiff filed a stipulation to dismiss *Liebich v. Hardy* as to IDOC and the IDOC employees in July, 2015. Defendants lack knowledge or information**

sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

      D.      Defendants Repeat the Previous Misconduct, Depriving Mr. Liebich of Accommodations for His Disability and Punishing Him for Being Disabled

    44.    On or around December 22, 2017, less than a year after the settlement, an IA officer appeared at Mr. Liebich's cell to escort Mr. Liebich to the Investigations Office for another drug test. Mr. Liebich was able to provide a urine sample that tested negative for drugs.

**ANSWER: Defendants admit Plaintiff filed a stipulation to dismiss *Liebich v. Hardy* as to IDOC and the IDOC employees in July, 2015. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

    45.    Defendants Mitchell, Perez, and Wilcox were IA officers at Stateville in January 2018. At the same time, on information and belief, Defendant Clements was chair of IA at Stateville and Defendant Starkey was chair of the Investigations and Intelligence Division.

**ANSWER: Defendants admit Defendant Clements was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Parole Agent with IDOC. Defendant Mitchell was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Correctional Officer at Stateville. Defendants admit Defendant Perez was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Correctional Officer at Stateville. Defendants admit Defendant Wilcox was an IDOC employee working at Stateville at all times relevant to the instant suit, and is a current Correctional Officer at Stateville. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

    46.    On January 11, 2018, Defendants Mitchell and Perez escorted Mr. Liebich from his cell to the Investigations Office for yet another drug test.

**ANSWER: Defendants admit that on January 11, 2018, Plaintiff was escorted to the Investigations Office for urine drug screening administered by Defendant Perez. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

47.     Defendants Clements, Wilcox, and Starkey were in the Investigations Office when Mr. Liebich arrived with Defendants Mitchell and Perez.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

48.     Mr. Liebich told the officers that he suffered from a kidney condition that sometimes made it impossible for him to provide a urine sample in only two hours. He explained that he had passed a kidney stone the day before and was having difficulty urinating.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

49.     Defendant Starkey told Mr. Liebich that if he could not provide a sample in two hours, Starkey would ensure that Mr. Liebich received the maximum punishment of six months segregation time, and that Mr. Liebich would be transferred to Pontiac Correctional Center, a prison notorious for holding prisoners in solitary confinement under harsh conditions.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

50.     While Mr. Liebich was waiting in the holding cell, Defendant Wilcox approached him and, in the hearing of the other IA officers, asked how much money Mr. Liebich got from his recent settlement. Mr. Liebich did not respond.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

51.     After two hours, Mr. Liebich was only able to produce a small amount of urine. Defendant Mitchell looked at the sample, told Mr. Liebich it wasn't enough, and threw it away without attempting to test it.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

52.     Mr. Liebich pleaded with Defendant Clements—who had escorted Mr. Liebich to the infirmary for his hospitalization in 2010—to acknowledge that Clements knew about Mr. Liebich's kidney disorder. Mr. Liebich also offered to submit to a blood test to show that he was not under the influence of drugs.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

53.     Defendant Clements stood by while Defendant Mitchell handcuffed Mr. Liebich. Mr. Liebich was then escorted from the Investigations Office to the segregation housing unit.

**ANSWER: Defendants admit Plaintiff was placed in segregation on January 11, 2018. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

54.     Later that day, Defendant Perez submitted a disciplinary report citing Mr. Liebich for a "Drugs & Drug Paraphernalia" offense. In the comments field on the disciplinary report form, Perez wrote: "refused to provide a urine sample."

**ANSWER: Defendants admit that on January 11, 2018, Defendant Perez wrote Plaintiff a disciplinary ticket with the listed Department Rule 504 offenses being "Failure to Submit to Medical or Forensic Tests" and "Drugs and Drug Paraphernalia." Defendants admit that in the observations portion of said disciplinary ticket, it was noted both that Plaintiff was ordered to provide a urine sample for a Urinalysis test, and that Plaintiff did not provide a sample within a two-hour timeframe. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

55.     Mr. Liebich received a copy of the disciplinary report and notification that he would be brought before the Adjustment Committee for a hearing.

**ANSWER: Defendants admit that Plaintiff was served a copy of the January 11 disciplinary ticket on January 12 and 13, 2018, but refused to sign acknowledging service.**

**Defendants admit that the copy of the January 11 disciplinary ticket Plaintiff was served with advised Plaintiff of an upcoming Adjustment Committee hearing, and further advised Plaintiff of the procedure for calling witnesses to testify during the hearing. Defendants admit that Plaintiff did not indicate on the January 11 disciplinary ticket he was served with that he was requesting any witnesses to be called to testify during the Adjustment Committee hearing. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

56.     Before the hearing, Mr. Liebich spoke to Defendant Johnson, a correctional officer working as an hearing investigator for the Adjustment Committee. Mr. Liebich requested Johnson's help gathering medical records and past grievances, which documented his history of kidney disorder and difficulty urinating.

**ANSWER: Defendants admit that Plaintiff did not indicate on the January 11, 2018, disciplinary ticket he was served with that he was requesting any witnesses to be called to testify during the Adjustment Committee hearing. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

57.     In addition, Mr. Liebich asked correctional officer P. Jones, who had escorted him to St. Joseph Medical Center in June 2010, to provide a statement for his defense. Jones agreed, and, on information and belief, provided a statement to Defendant Johnson.

**ANSWER: Defendants admit that Plaintiff did not indicate on the January 11, 2018, disciplinary ticket he was served with that he was requesting any witnesses to be called to testify during the Adjustment Committee hearing. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

58.     The Adjustment Committee hearing took place January 23, 2018 before Defendants Lieutenant Commander Best and correctional counselor Tyneer N. Butler-Winters.

**ANSWER: Defendants admit that an Adjustment Committee hearing for the January 11 disciplinary ticket took place on January 23, 2018. Defendants admit Defendant Best was the Chairperson of the Adjustment Committee for said hearing. Defendants admit Defendant Butler-Winters sat on the Adjustment Committee for said hearing. Defendants admit Defendant Butler-Winters was a Correctional Counselor at Stateville. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph. Defendants deny that Defendant Best was a Lieutenant Commander at Stateville.**

59.     Mr. Liebich had been unable to procure copies of the vast majority of his medical records or grievances before the hearing; and to his surprise, the Committee did not have a copy of Officer Jones' witness statement. Nor did Defendant Johnson take any action to gather Mr. Liebich's medical records or disciplinary records for the Committee's consideration.

**ANSWER: Defendants admit that Plaintiff did not indicate on the January 11, 2018, disciplinary ticket he was served with that he was requesting any witnesses to be called to testify during the Adjustment Committee hearing. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

60.     At the hearing, Mr. Liebich explained his medical condition to Defendants Best and Butler-Winters, and described where they could find documents in his prison medical and master file corroborating his account. He also provided the names of medical and correctional staff who witnessed his condition over the years.

**ANSWER: Defendants admit that the Adjustment Committee Final Summary Report indicates, "Inmate Liebich R34940 pleads not guilty and states he has medical issues which cause difficulty with urination." Defendants admit that Plaintiff did not indicate on the January 11, 2018, disciplinary ticket he was served with that he was requesting any witnesses to be called to testify during the Adjustment Committee hearing. Defendants lack**

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

61.     The Committee found Mr. Liebich guilty and sentenced him to three months in segregation; three months of C Grade status (meaning he would only be permitted to place one phone call per month); three months of commissary restriction (meaning he would only be permitted to purchase hygiene products); and six months without any contact visits.

**ANSWER: Defendants admit that, following the January 23, 2018, hearing, the Adjustment Committee recommended Plaintiff be found guilty of the charge of "Drugs and Drug Paraphernalia" and recommended he be sentenced to three (3) months C Grade, three (3) months segregation, three (3) months commissary restriction, and six (6) months contact visits restriction. Defendants admit that, following the January 23, 2018, hearing, the Adjustment Committee recommended Plaintiff be found guilty of the charge of "Failure to Submit to Medical or Forensic Tests." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

62.     The Adjustment Committee's report summarizing the hearing noted: "Per HCU staff there's nothing in Liebich R34930 file stating he has a problem urinating or producing a specimen. Liebich haven't [sic] had a problem since 2010. The Committee is satisfied that inmate Liebich R34940 did in fact violate the charges cited."

**ANSWER: Defendants admit that the Adjustment Committee Final Summary Report indicates the Committee's "Basis for Decision" was, *inter alia*, that "[p]er HCU staff there's nothing in Liebich R34930 file stating he has a problem urinating or producing a specimen. Liebich haven't [*sic*] had a problem since 2010. The Committee is satisfied that inmate Liebich R34940 did in fact violate the charges cited." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

63.     On information and belief, the Committee did not, in fact, confer with medical staff about Mr. Liebich's continuing urological issues and the effect of those issues on his ability to urinate. Alternatively, the Committee took no steps to corroborate the incorrect information medical staff provided, including reviewing Mr. Liebich's medical records and/or permitting Mr. Liebich to present witnesses to attest to his post-2010 problems urinating.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

64.     The following day, on January 24, 2018, Mr. Liebich was seen by physician assistant La Tanya Williams in the Health Care Unit.

**ANSWER: Defendants admit Plaintiff saw a physician assistant on January 24, 2018. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

65.     Williams noted in Mr. Liebich's medical record, among other things, that he had a history of nephrolithiasis—a disease characterized by chronic kidney stones—and benign prostatic hyperplasia—prostate gland enlargement that can block the flow of urine out of the bladder. She ordered blood tests; renewed Mr. Liebich's Flomax prescription; referred him to the medical director for a follow-up appointment; and requested Wexford approve Mr. Liebich for an ultrasound of his kidney and bladder.

**ANSWER: Defendants admit that, when Plaintiff saw a physician assistant on January 24, 2018, the physician assistant noted that Plaintiff had a history of nephrolithiasis. Defendants admit that, following said visit, the physician assistant, *inter alia*, ordered a lab test, ordered an ultrasound, and prescribed Flomax. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

66.     Mr. Liebich's lab results were returned two days later. The labs were again abnormal, indicating kidney distress. Among other things, the labs showed Mr. Liebich's urine contained a "large" amount of blood.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

67. On January 29, 2018, Wexford approved Williams' ultrasound recommendation based on its finding that Mr. Liebich had a history "of kidney stones over the past 10 years. Last seen by Urology in 2015. Reporting pain in renal area. Passed two small stones in 6 weeks."

**ANSWER: Defendants admit a "Medical Special Services Referral and Report" dated January 29, 2019, lists the reason for requesting a referral as "[h]istory of kidney stones over the past 10 years. Last seen by Urology in 2015. Reporting pain in renal area. Passed two small stones in 6 weeks." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

68. The ultrasound was conducted the same day and, according to the report, showed multiple kidney stones up to .4 cm in Mr. Liebich's right kidney and stones up to .9 cm in his left kidney. In the field for "impressions," the ultrasound report noted: "Nonobstructing bilateral nephrolithiasis," meaning Mr. Liebich had stones in both kidneys.

**ANSWER: Defendants admit that an ultrasound was conducted on January 29, 2018, with the subsequent report noting, *inter alia*, "nonobstructing stones up to 0.4 cm" in Plaintiff's right kidney, and "nonobstructing stones up to 0.9 cm" in Plaintiff's left kidney. Defendants admit that said ultrasound listed as an imperession, *inter alia*, "[n]onobstructing bilateral nephrolithiasis[,]" and "[n]o pelvocaliectasis." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

69. On February 1, 2018, Warden Pfister or his delegate signed the Adjustment Committee's final summary report indicating his approval.

**ANSWER: Defendants admit that, following the January 23, 2018, hearing, the Adjustment Committee recommended Plaintiff be found guilty of the charge of "Drugs and Drug Paraphernalia" and recommended he be sentenced to three (3) months C Grade, three (3) months segregation, three (3) months commissary restriction, and six (6) months contact visits restriction. Defendants admit that, following the January 23, 2018, hearing,**

**the Adjustment Committee recommended Plaintiff be found not guilty of the charge of**

**"Failure to Submit to Medical or Forensic Tests." Defendants admit that, on February 1,**

**2018, Defendant Pfister or his designee concurred with the Adjustment Committee's**

**recommendations with regard to the January 11 disciplinary ticket. Defendants lack**

**knowledge or information sufficient to form a belief as to the truth of the remaining**

**allegations contained in this paragraph.**

70.     On February 6, 2018, Mr. Liebich wrote substantially identical letters to Defendant Best and Defendant Nicholson, who had recently taken over for Pfister as warden of Stateville. The letters reported that the Adjustment Committee sentenced him to segregation based on its finding that he hasn't had kidney issues since 2010. In his letter to Defendant Best, Mr. Liebich explained:

> This is incorrect and I ask that you contact the HCU and have them verify these specific dates from my medical file that confirm[] that I've had multiple issues with kidney stones, BPH (Benign Prostatic Hyperplasia), urine retention, inability to urinate, and Nephrolithiasis (3-20-2017, 7-1-2015, 8-12-2014, 7-2-2014, 5-8-2014, 2-6-2014, 10-30-2014, 5-1-2013 prescription order, 12-12-12 prescription order, 9-25-12, 7-11-14, 6-10-14, 1-13-14, 9-20-13, 6-18-11, 5-4-2011, 8-17-12, 2-16-12 prescription order, 2-16-12, 5-9-11). These are just some of the records that establish my issues exceed far beyond 2010.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the**

**truth of the allegations contained in this paragraph.**

71.     Mr. Liebich enclosed with both letters copies of the medical records from his January 2018 Health Care Unit visit, lab work, and ultrasound. He elaborated: "this is mitigating evidence that must be considered because it substantiates and confirms that I have a current medical condition that prevented me from being able to produce an adequate urine specimen on 1-11-2018."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the**

**truth of the allegations contained in this paragraph.**

72.     On February 15, 2018, Mr. Liebich spoke to hearing investigator Johnson to inquire about Officer Jones' witness statement. Johnson acknowledged that she took a statement from Jones in advance of the hearing. Mr. Liebich requested a copy of the statement. Five days later, Johnson told Mr. Liebich that according to Defendant Best, Johnson could not provide Mr. Liebich a copy of Jones' witness statement. On March 2, Johnson admitted to Mr. Liebich that

she typed Jones' statement into the computer, but due to a technical error, the Adjustment Committee never received it. Johnson said that Defendant Best would not allow her to add the statement to Mr. Liebich's record at that time.

**ANSWER: Defendants admit that Plaintiff did not indicate on the January 11, 2018, disciplinary ticket he was served with that he was requesting any witnesses to be called to testify during the Adjustment Committee hearing. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

73.    Between January and April 2018, Mr. Liebich submitted at least five grievances alerting IDOC employees at Stateville that he (a) suffered from a disability; (b) IA was refusing to accommodate the disability; (c) he received a disciplinary report because of his disability; (d) he was denied the chance to present a fair defense at his Adjustment Committee hearing; and (e) the Adjustment Committee's decision to severely punish him was based on demonstrably false information.

**ANSWER: Defendants admit that Plaintiff submitted a grievance dated January 14, in which he complained, *inter alia*, about the disciplinary ticket dated January 11, 2018, and further requested help in obtaining copies medical records to present at the Adjustment Committee hearing on the ticket. Defendants admit a Correctional Counselor responded to this grievance on January 17, 2018, indicating, *inter alia*, that Plaintiff should contact the medical records office in order to obtain copies of his medical records to present at the Adjustment Committee hearing on the ticket. Defendants admit that Plaintiff submitted a second grievance dated January 18, in which he complained, *inter alia*, about the disciplinary ticket dated January 11, 2018, and how he believed that urine drug screening violated the Americans with Disabilities Act ("ADA"). Defendants admit that Plaintiff submitted a grievance dated January 18, in which he complained, *inter alia*, about the disciplinary ticket dated January 11, 2018. Defendants admit that Plaintiff submitted a grievance dated February 8, in which he complained, *inter alia*, about how he believed that**

the Adjustment Committee's decision on the January 11, 2018, disciplinary ticket was based on incomplete information, and about how he believed that the Committee's decision should be revisited in light of new evidence that "had not yet existed." Defendants admit that Plaintiff submitted a grievance dated March 6, in which he complained, *inter alia*, about how he believed that the Adjustment Committee's decision on the January 11, 2018, disciplinary ticket was based on incomplete information. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

74.    For example, on January 14, 2018, Mr. Liebich grieved that IA's drug testing protocol and Mr. Liebich's punishment for failing to provide a urine sample in two hours violated the ADA.

ANSWER: Defendants admit that Plaintiff submitted a grievance dated January 18, in which he complained, *inter alia*, about the disciplinary ticket dated January 11, 2018, and how he believed that urine drug screening violated the Americans with Disabilities Act ("ADA"). Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

75.    On January 16, 2018, Mr. Liebich grieved that, earlier that day, IA Officer Mitchell subjected him to another drug test using the same protocol (though this time, Mr. Liebich was able to provide a large enough sample, which was negative for drugs).

ANSWER: Defendants admit that on January 16, 2018, Plaintiff submitted to a urine drug screening test ordered by Defendant Mitchell. Defendants admit that Plaitiff tested negative for drugs following said test. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

76.    In a January 26, 2018 grievance, Mr. Liebich reported that Defendant Johnson ignored his request for help gathering evidence for his Adjustment Committee hearing.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

77.     On February 8, 2018, Mr. Liebich filed a grievance describing his January medical visit and test results, and attached copies of the medical records.

**ANSWER: Defendants admit that Plaintiff submitted a grievance dated February 8, in which he complained, *inter alia*, about how he believed that the Adjustment Committee's decision on the January 11, 2018, disciplinary ticket was based on incomplete information, and about how he believed that the Committee's decision should be revisited in light of new evidence that "had not yet existed." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

78.     Finally, on March 6, 2018, Mr. Liebich submitted a grievance attaching excerpts from the expert report of urologist Richard James Boxer, M.D., which he'd disclosed in his 2011 lawsuit. The expert report detailed Mr. Liebich's history of kidney stones; the standard of treatment for Mr. Liebich's condition; and Dr. Boxer's conclusion that IDOC's policies caused Mr. Liebich to receive below-standard medical care.

**ANSWER: Defendants admit that Plaintiff submitted a grievance dated March 6, in which he complained, *inter alia*, about how he believed that the Adjustment Committee's decision on the January 11, 2018, disciplinary ticket was based on incomplete information. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

79.     On information and belief, Defendant Nicholson concurred with the decision to deny each of those grievances.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

80.     Despite receiving Mr. Liebich's grievances, letters, and medical records, Defendants Nicholson and Best failed to take any steps to help Mr. Liebich.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

81.    As a result, solely because of his medical disability, Mr. Liebich served three months in segregation with drastic limitations on his privileges and no access to the law library or educational and religious programming. In addition, for six months, Mr. Liebich was restricted from placing more than one phone call per month and from receiving contact visits.

**ANSWER: Defendants admit that, following the January 23, 2018, hearing, the Adjustment Committee recommended Plaintiff be found guilty of the charge of "Drugs and Drug Paraphernalia" and recommended he be sentenced to three (3) months C Grade, three (3) months segregation, three (3) months commissary restriction, and six (6) months contact visits restriction. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

E.    Defendants Retaliate Against Mr. Liebich

82.    IDOC employees at Stateville responded to Mr. Liebich's grievances with a series of punitive and retaliatory strip searches and cell shakedowns.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

83.    On February 12, 2018 a tactical team ambushed Mr. Liebich in his cell, strip searched him, and ransacked his belongings. The team found no contraband.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

84.    March 21, 2018, Defendant Olson, a correctional officer assigned to IA, searched Mr. Liebich's cell and his property and legal boxes, which were being stored in the property room of the segregation housing unit.

**ANSWER: Defendants admit that, on March 21, 2018, Defendant Olson conducted a shakedown of Plaintiff's property and legal boxes in the Unit X property room. Defendants**

lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

85.     Defendant Olson claimed to find contraband in the property box and wrote a disciplinary report citing Mr. Liebich for a "Major Infraction."

**ANSWER: Defendants admit that, on March 21, 2018, Defendant Olson conducted a shakedown of Plaintiff's property and legal boxes in the Unit X property room. Defendants admit that Defendant Olson found contraband in Plaintiff's property and legal boxes. Defendants admit that Defendant Olson wrote Plaintiff a disciplinary ticket with the listed Department Rule 504 offenses being "Contraband or Unauthorized Property." Defendants admit that in the observations portion of said disciplinary ticket, it was noted that Defendant Olson conducted a shakedown of Plaintiff's property and legal boxes and found contraband. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph. Defendants deny Defendant Olson cited Plaintiff for a "Major Infraction."**

86.     Olson indisputably fabricated the contraband he claimed to have found. Indeed, a sergeant at Stateville assigned to the segregation unit inventoried the Mr. Liebich's property box in January 2018 when Mr. Liebich was sentenced to segregation. The sergeant documented that Mr. Liebich had no contraband. Between then and Defendant Olson's search, Mr. Liebich did not have access to the box. The sergeant appeared before the Adjustment Committee at the hearing on Olson's disciplinary report and explained as much.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Defendants deny Defendant Olson "indisputably fabricated the contraband he claimed to have found." Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

87.     Consequently, the Adjustment Committee—which included Defendant Best—expunged the report, noting: "Staff verifies that none of the items were in [Mr. Liebich's] box when he was brought to seg and he hasn't had access to his property."

**ANSWER: Defendants admit that an Adjustment Committee hearing for the March 21 disciplinary ticket took place on March 27, 2018. Defendants admit Defendant Best was the Chairperson of the Adjustment Committee for said hearing. Defendants admit that the Adjustment Committee Final Summary Report indicates the Committee's "Basis for Decision" was, *inter alia*, that "[s]taff verifies that none of the items were in [Plaintiff's] . . . box when he was brought to seg and he hasn't had access to his property." Defendants admit that the Adjustment Committee thereafter expunged the March 21 disciplinary ticket. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

88.     Warden Nicholson signed off on the expungement on March 28, 2018.

**ANSWER: Defendants admit that, on March 28, 2018, Stateville Warden Sherwin Miles or his designee concurred with the Adjustment Committee's recommendations with regard to the March 21 disciplinary ticket. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph. Defendants deny that, on March 28, 2018, Defendant Nicholson concurred with the Adjustment Committee's recommendations with regard to the March 21 disciplinary ticket. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

89.     On March 23, 2018, IA officers Mitchell and Perez removed Mr. Liebich from his cell, strip searched him, and ransacked his belongings. The officers found no contraband and the search served no purpose other than to harass Mr. Liebich.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

90.    IA officers Wilcox, Rivera, Davenport, and Shevlin returned to Mr. Liebich's cell six days later and subjected him to another punitive strip search and cell shakedown. Again, the officers found no contraband.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

91.    Mr. Liebich filed emergency grievances alerting Warden Nicholson of the retaliatory and abusive shakedowns and strip searches. Warden Nicholson denied both grievances.

**ANSWER: Defendants admit that Plaintiff submitted a grievance dated March 21, 2018, in which he complained about being shaken down by Defendants Mitchell and Perez earlier that day. Defendants admit Plaintiff submitted a grievance dated March 29, 2018, in which he complained about being shaken down by Davenport, Rivera, Shevlin, and Wilcock. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

92.    In addition, while Mr. Liebich was returning from a medical appointment in early 2018, he passed Warden Nicholson in the prison hallway. Mr. Liebich told the warden that IA was harassing him, and Nicholson responded: "I know all about you."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever**

93.    Warden Nicholson took no steps thereafter to stop IA officers' retaliation against Mr. Liebich.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

<u>Count I</u>
**Violations of the ADA**
**(Against Baldwin and IDOC)**

94.     Mr. Liebich re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

**ANSWER: Defendants restate and incorporate their answers to the preceding paragraphs of this pleading as if fully stated herein.**

95.     On July 12, 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

**ANSWER: Averments of Paragraph 95 set forth a legal conclusion that requires no response from Defendants.**

96.     The IDOC is a public entity because it is a department, agency, special purpose district, or other instrumentality of the State of Illinois, as defined in 42 U.S.C. § 12131(1).

**ANSWER: Averments of Paragraph 96 set forth a legal conclusion that requires no response from Defendants.**

97.     Mr. Liebich, at all times relevant to this complaint, was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2), and had a right not to be subjected to discrimination on the basis of his disability. 42 U.S.C. § 12132.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

98.     Under the ADA, 42 U.S.C. § 12132, and 28 C.F.R. § 35.130(a), Defendants must ensure that individuals in their custody are not, on the basis of a disability, excluded from participation in or denied the benefits of generally available services, programs, or activities.

**ANSWER: Averments of Paragraph 95 set forth a legal conclusion that requires no response from Defendants. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

99. Defendants subjected Mr. Liebich to repeated random drug testing that required him to provide an on-demand urine sample knowing of his kidney condition, and knowing that he likely could not comply with the testing protocol.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

100. Individuals in IDOC custody, like Mr. Liebich, are wholly dependent on the IDOC for medical care, accommodation, and safety.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

101. Defendants failed to accommodate Mr. Liebich's disability by, among other things, refusing to lift the time restriction on the IA drug testing protocol, and subjecting him to punishment for his inability to provide a urine sample within two hours. That punishment included, among other things, depriving Mr. Liebich of the privileges and opportunities afforded to other inmates at Stateville, including access to the law library, educational programming, religious programming, phone calls, contact visits, and unrestricted commissary purchases.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

102. As a result of Defendants' wrongful conduct, Mr. Liebich was subjected to unnecessary pain and suffering.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

**Count II**

## Violations of the Rehabilitation Act
### (Against Baldwin and IDOC)

103.    Mr. Liebich re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

**ANSWER: Defendants restate and incorporate their answers to the preceding paragraphs of this pleading as if fully stated herein.**

104.    The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

**ANSWER: Averments of Paragraph 104 set forth a legal conclusion that requires no response from Defendants.**

105.    IDOC receives federal financial assistance within the meaning of 29 U.S.C. § 794(a).

**ANSWER: Averments of Paragraph 105 set forth a legal conclusion that requires no response from Defendants.**

106.    IDOC constitutes a "program or activity" within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B), and is required to comply with the Rehabilitation Act.

**ANSWER: Averments of Paragraph 106 set forth a legal conclusion that requires no response from Defendants.  To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

107.    Mr. Liebich is a qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(2). He has a right not to be excluded, on the basis of his disability, from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

**ANSWER: Defendants deny the allegations contained in this paragraph.**

108.    Defendants excluded Mr. Liebich from participation in, denied him the benefits of, and subjected him to discrimination under various programs and activities receiving federal

financial assistance by, among other things, refusing to permit Mr. Liebich more than two hours to provide a urine specimen for drug testing, and denying Mr. Liebich access to various services and facilities at Stateville, including the law library, commissary, telephone, contact visits, and educational and religious programming.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

109.    As a result of Defendants' wrongful conduct, Mr. Liebich was subjected to unnecessary pain and suffering.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

### Count III
### 42 U.S.C. § 1983 – Cruel & Unusual Punishment (Eighth Amendment)
### (Against Perez, Mitchell, Baldwin, and Pfister)

110.    Mr. Liebich re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

**ANSWER: Defendants restate and incorporate their answers to the preceding paragraphs of this pleading as if fully stated herein.**

111.    As described above, Defendants Perez and Mitchell inflicted unnecessary physical and emotional pain and suffering on Mr. Liebich by refusing to permit him extra time to provide a urine sample. They did so intentionally, wantonly, with malice and/or with reckless indifference to Mr. Liebich's rights.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

112.    Alternatively, Defendants knew the risk of harm that their misconduct posed and nevertheless acted with deliberate indifference in carrying out the drug test.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

113.    As a result of Defendants' unjustified and unconstitutional conduct, Mr. Liebich suffered pain, emotional distress, and injuries.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

114.    Mr. Liebich's injuries were proximately caused by the policies and practices of John Baldwin and Randy Pfister.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

115.    On information and belief, Defendants Perez and Mitchell executed their unconstitutional drug test pursuant to a policy or practice implemented and overseen by Defendants Baldwin and Pfister. Accordingly, Defendants Baldwin and Pfister, who were responsible for supervision and oversight of the IA officers at Stateville, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training to and supervision of IA officers, and failed to adequately punish and discipline prior instances of similar misconduct. Defendants Baldwin and Pfister thus violated Mr. Liebich's rights by maintaining and implementing policies and practices that were the moving force behind the foregoing constitutional violation.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

116.    On information and belief, Defendants Baldwin and Pfister had notice of policies and practices pursuant to which IA subjected disabled prisoners to unconstitutional and tortious drug testing protocols, as described above. Despite knowledge of these problematic policies and practices, Defendants Baldwin and Pfister did nothing to ensure disabled prisoners were provided extra time to provide urine samples for drug testing, and were not punished for their failure to provide samples in two hours. The above-described policies and practices were able to exist and thrive because Defendants Baldwin and Pfister were deliberately indifferent to the problem, thereby effectively ratifying it.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

117.    Mr. Liebich's injuries were caused by IDOC employees, including the named defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this count.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny**

**any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any**

**relief whatsoever.**

### Count IV
### 42 U.S.C. § 1983 – Failure to Intervene (Eighth Amendment)
### (Against Nicholson, Starkey, Mitchell, and Clements)

118.    Mr. Liebich re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

**ANSWER: Defendants restate and incorporate their answers to the preceding paragraphs**

**of this pleading as if fully stated herein.**

119.    As described above, Defendants Nicholson, Starkey, Mitchell, and Clements had a reasonable opportunity to prevent the violation of Mr. Liebich's constitutional rights set forth above had they been so inclined; but they failed to do so.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

120.    Defendants' actions were undertaken intentionally, with malice and with reckless indifference to Mr. Liebich's rights.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

121.    As a direct and proximate result of the misconduct described in this count, Mr. Liebich's rights were violated and he suffered physical and emotional injuries.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny**

**any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any**

**relief whatsoever.**

### Count V
### 42 U.S.C. § 1983 – Procedural Due Process (Fourteenth Amendment)
### (Against Nicholson, Starkey, Mitchell, and Clements)

122. Mr. Liebich re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

**ANSWER: Defendants restate and incorporate their answers to the preceding paragraphs of this pleading as if fully stated herein.**

123. As described more fully above, Defendants Nicholson, Johnson, Best, and Butler-Winters violated Mr. Liebich's right to procedural due process by depriving Mr. Liebich of the right to call witnesses and/or present documentary evidence at his Adjustment Committee hearing, and by recommending and/or approving, among other punishments, three months of segregation and six months of C-grade status when there was no evidence to support a guilty verdict, and when Defendants knew that in fact Mr. Liebich's medical condition had caused his inability to provide a urine sample.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

124. Defendants' actions were undertaken intentionally, with malice and with reckless indifference to Mr. Liebich's rights.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

125. As a direct and proximate result of the misconduct described in this count, Mr. Liebich's rights were violated and he suffered physical and emotional injuries.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

<u>**Count VI**</u>
**42 U.S.C. § 1983 – Retaliation for Speech (First Amendment)**
**(Against Perez, Mitchell, Wilcox, Rivera, Davenport, Shevlin, Olson, and Nicholson)**

126. Mr. Liebich re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

**ANSWER: Defendants restate and incorporate their answers to the preceding paragraphs of this pleading as if fully stated herein.**

127. On information and belief, Defendants Perez, Mitchell, Wilcox, Rivera, Davenport, Shevlin, and Olson were aware of Mr. Liebich's requests for accommodation of his disability, his 2011 lawsuit against IDOC, Wexford, and their employees, and the grievances Mr. Liebich submitted about his mistreatment at Stateville.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

128. Mr. Liebich's right to request accommodations and treatment for his physical disability, submit grievances, and file lawsuits is protected by the Free Speech Clause of the First Amendment to the United States Constitution.

**ANSWER: Averments of Paragraph 128 set forth a legal conclusion that requires no response from Defendants. To the extent that a response is required, Defendants admit that the First Amendment to the United States Constitution protects the right to free speech. Defendants deny the remaining allegations contained in this paragraph.**

129. As described above, Defendants Perez, Mitchell, Wilcox, Rivera, Davenport, Shevlin, and Olson took adverse, hostile, and unreasonably harmful action against Mr. Liebich, including subjecting him to punitive strip searches and shaking down his cell in retaliation for Mr. Liebich's exercise of his constitutional rights.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

130. As described above, Defendant Nicholson took adverse, hostile, and unreasonably harmful action against Mr. Liebich, including condoning Mr. Liebich's continued incarceration in segregation because of his physical inability to produce a urine specimen in two hours.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

131. Mr. Liebich's exercise of his right to free speech, including his complaints, lawsuit, and grievances, was the motivating factor for Defendants' adverse acts against him.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

<u>**Count VII**</u>
**Willful and Wanton Misconduct under Illinois Law**
**(Against Pfister, Nicholson, Johnson, Best, Butler-Winters, Starkey, Perez, Mitchell, Clements, Wilcox, Rivera, Davenport, Shevlin, and Olson)**

132. Mr. Liebich re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

**ANSWER: Defendants restate and incorporate their answers to the preceding paragraphs of this pleading as if fully stated herein.**

133.    Because Mr. Liebich was a prisoner in their care, Defendants had a duty to refrain from deliberately or intentionally harming Mr. Liebich, or acting in a manner that showed utter indifference to or conscious disregard for Mr. Liebich's safety.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

134.    By denying Mr. Liebich the opportunity to present evidence at his disciplinary hearing, punishing Mr. Liebich with segregation, and retaliating against him, Defendants were willful and wanton in that they demonstrated an utter indifference Mr. Liebich's safety.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

135.    Defendants were aware that an injury would likely result from their course of action and recklessly disregarded the consequences of those actions.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

136.    As a direct and proximate result of Defendants' willful and wanton misconduct, Mr. Liebich suffered physical and emotional injuries.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

<u>**Count VIII**</u>
**Intentional Infliction of Emotional Distress under Illinois Law**
**(Against Pfister, Nicholson, Johnson, Best, Butler-Winters, Starkey, Perez, Mitchell, Clements, Wilcox, Rivera, Davenport, Shevlin, and Olson)**

137.    Mr. Liebich re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

**ANSWER: Defendants restate and incorporate their answers to the preceding paragraphs of this pleading as if fully stated herein.**

138.     As described above, by denying Mr. Liebich the opportunity to present evidence at his disciplinary hearing, sentencing him to segregation, and retaliating against him, Defendants engaged in extreme and outrageous conduct.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

139.     Defendants' actions set forth above were rooted in an abuse of power or authority.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

140.     Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress or with reckless disregard of that probability.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

141.     Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to Mr. Liebich's rights.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

142.     As a direct and proximate result of this misconduct, Mr. Liebich suffered injuries, including severe emotional distress and great conscious pain and suffering.

**ANSWER: Defendants deny the allegations contained in this paragraph. Defendants deny any violation of Plaintiff's rights whatsoever, and further deny Plaintiff is entitled to any relief whatsoever.**

## GENERAL DENIAL

Defendants expressly deny any allegation not specifically admitted.

## RELIEF REQUESTED

Defendants deny that Plaintiff is entitled to any relief whatsoever.

## JURY DEMANDED

Defendants demand a trial by jury in this matter.

## AFFIRMATIVE DEFENSES

**1.  Qualified Immunity**

At all times relevant herein, Defendants acted in good faith in the performance of their official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.

### 2. Sovereign Immunity

To the extent that Plaintiff has alleged claims against Defendants in their official capacity, those claims are barred by the Eleventh Amendment.

### 3. Res Judicata and Collateral Estoppel

To the extent Plaintiff has alleged claims waived as part of the settlement in *Liebich v. Hardy, et al.*, No. 11-cv-5624 (N.D. Ill.), such claims are barred under the doctrines of res judicata and collateral estoppel.

### 4. Exhaustion of Administrative Remedies

Plaintiff has filed suit concerning his time in Illinois Department of Corrections' custody. Plaintiff has failed to properly exhaust his administrative remedies regarding at least one of his claims as is required prior to filing suit under 42 U.S.C. §1983, and his claims are, therefore, barred by the Prison Litigation Reform Act, 42 U.S.C. §1997e(a), and *Perez v. Wis. Dept. of Corr.*, 182 F. 3d 532 (7th Cir. 1999).

### 5. Laches

Plaintiff's claims may be barred by the doctrine of laches to the extent that his delay in bringing suit misled, prejudiced, or caused Defendants to take courses of action different from that which they might have otherwise taken absent the delay.

### 6. Absolute Immunity

Plaintiff's claims may be barred by the doctrine of Absolute Immunity.

**7. State Lawsuit Immunity**

Plaintiff's state law claims may be barred by the State Lawsuit Immunity Act.

**8. Public Official Immunity**

Plaintiff's state law claims may be barred by the doctrine of Public Official Immunity.

Respectfully submitted,

KWAME RAOUL
Attorney General for Illinois                By:      /s/ Alan Williams
                                                      Alan Williams
                                                      Assistant Attorney General
                                                      100 W. Randolph St., 13th Floor
                                                      Chicago, Illinois 60601
                                                      T: 312-814-3654, F: 312-814-4425
                                                      ajwilliams@atg.state.il.us

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2019, the foregoing document, *Defendants Clements, Mitchell, Perez, and Starkey's Answer and Affirmative Defenses*, was electronically filed with the Clerk of the Court using the CM/ECF system. Parties of record may obtain a copy through the CM/ECF system.

Respectfully submitted,

/s/ Alan Williams
Alan Williams